UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARLIN MEJIA,

        Plaintiff,

v.

CHICO'S FAS, INC.,

        Defendant.

Case No. 24-cv-01007-VC

**ORDER DENYING MOTION TO REMAND**

Re: Dkt. No. 28

    The motion to remand is denied. This order assumes the reader's familiarity with the facts, the applicable legal standards, and the arguments made by the parties.

    Mejia has alleged a laundry list of violations based on what it asserts are Chico's policies and practices. Because of that, and because it isn't unreasonable to assume that most of the alleged violations over the multiple years at issue in this case occurred more than 30 days before the suit was filed, it isn't unreasonable to assume that each separated employee was entitled to the maximum 30-day waiting time penalty. *See Jauregui v. Roadrunner Transportation Services, Inc.*, 28 F.4th 989, 993–94 & n.5 (9th Cir. 2022); *Lopez v. Adidas America, Inc.*, 2021 WL 927265, at *2 (C.D. Cal. Mar. 11, 2021). And Chico's has presented evidence showing the approximate number of separated nonexempt employees during that time and their average pay rates and shift lengths. Therefore, Chico's estimate that this claim places $3,592,779.12 in controversy is reasonable.

    Chico's assumption of a 29.3% violation rate for Mejia's rest period claim is also reasonable in light of the complaint's allegation that Chico's has a "policy" and "rule"

unlawfully prohibiting employees from taking unconstrained walks during their rest periods.[1] Other courts have stated that similar allegations would make a 100% violation rate reasonable. *See, e.g.*, *Fischer v. Kelly Services Global, LLC*, 2024 WL 382181, at *5 (S.D. Cal. Jan. 31, 2024); *Herrera v. Signature Flight Support LLC*, 2022 WL 4225376, at *4 (C.D. Cal. Sept. 13, 2022). While that might not be the case here, given that the putative class includes part-time employees who might not have been entitled to a rest period every shift, Chico's only assumed a 29.3% violation rate (i.e., that both part- and full-time nonexempt employees experienced one violation per workweek). That assumption is reasonable. *See Lopez*, 2021 WL 927265, at *3. Chico's also presented evidence showing the number of weeks worked by nonexempt putative class members during the class period and their average pay rate. Thus, its estimate that this claim puts in controversy another $2,334,276.35 is reasonable.[2]

Thus, Chico's reasonable assumptions and estimates show that over $5 million is put in controversy by Mejia's waiting time and rest period claims alone—to say nothing of her unpaid wages, overtime, meal period, wage statement, or unreimbursed expenses claims, or of potential attorneys' fees. That the complaint alleges that the violations occurred "from time to time" does not change this or make Chico's assumptions and estimates unreasonable, given that the complaint also asserts that the violations it alleges were a result of policies and practices. *See, e.g.*, *Lopez*, 2021 WL 927265, at *2 ("The unsupported averment that violations occurred 'from time to time' does not cancel the Complaint's otherwise systemic class allegations, let alone does it warrant remand based on insufficient damages."); *Burgos v. Citibank, N.A.*, 2023 WL

---

[1] Chico's states that it assumed a 29.9% violation rate. However, this number was derived using an input of 119,035 part-time workweeks, while Chico's stated that 119,035 was the *total* number of workweeks and 89,813 the number of part-time workweeks. Using the correct figures shows that Chico's actually assumed a 29.3% weighted violation rate: ((89,813 part-time workweeks x 32.3% part-time violation rate) + (29,222 full-time workweeks x 20% full-time violation rate)) / 119,035 total workweeks.

[2] Indeed, based on the allegations in the complaint, Chico's likely could have reasonably assumed that all full-time nonexempt employees experienced a rest period violation *every* shift. Based on Chico's evidence showing that full-time nonexempt employees worked 29,222 workweeks during the class period for an average of $27.02 per hour, this would place $3,947,892.20 in controversy: 27.02 per hour x 5 shifts per week x 29,222 weeks—making Chico's estimate appear not just reasonable, but conservative.

5532123, at *3–4 (N.D. Cal. 2023).

**IT IS SO ORDERED.**

Dated: August 22, 2024

VINCE CHHABRIA
United States District Judge